WERLEIN, Respondent, vs. MILWAUKEE ELECTRIC RAILWAY & TRANSPORT COMPANY, Appellant.*

*September 7—October 5, 1954.*

* Motion for rehearing denied, with $25 costs, on December 7, 1954.

For the appellant there was a brief by *Shaw, Muskat &
Paulsen,* attorneys, and *John F. Zimmermann* of counsel, all
of Milwaukee, and oral argument by *Mr. Zimmermann.*

For the respondent there was a brief by *Henry L. Arnold,*
attorney, and *Eisenberg, Kletzke, Ratzel & Yockey* of coun-
sel, all of Milwaukee, and oral argument by *Mr. Arnold* and
*Mr. Sydney M. Eisenberg.*

CURRIE, J. The only claim of negligence asserted by plaintiff against the defendant was the latter's failure to equip the trackless trolley bus with windows of safety glass instead of plate glass. It is the contention of the defendant that there was no duty imposed upon it to equip the windows of its trackless trolley bus with safety glass either at common law or by statute.

We will first consider the issue of defendant's liability at common law. The degree of care imposed upon common carriers of passengers at common law is well stated in the opinion of this court by Mr. Justice OWEN in *Ormond v. Wisconsin Power & Light Co.* (1927), 194 Wis. 305, 307, 216 N. W. 489, and we quote therefrom as follows:

"The rule which prevails in this state was deliberately framed and stated in *Ferguson v. Truax,* 136 Wis. 637, 643, 118 N. W. 251, as follows:

" 'For the safety of their passengers, common carriers are required to exercise the highest degree of care reasonably to be expected from human vigilance and foresight, in view of the mode and character of the conveyance adopted and consistent with the practical prosecution of their business.'

"This rule has been strictly adhered to in *Merton v. Michigan Central R. Co.* 150 Wis. 540, 137 N. W. 767; *Anderson v. Yellow Cab Co.* 179 Wis. 300, 191 N. W. 748; *Carson v. Green Cab Co.* 186 Wis. 566, 203 N. W. 394. In *Ferguson v. Truax,* 136 Wis. 637, at p. 643 (118 N. W. 251), commenting on the rule, the court said:

" 'Expressing the elements of this rule in other terms, it imposes on carriers of passengers the highest degree of care that men of reasonable vigilance and foresight ordinarily exercise in the practical conduct of such business under the same or similar circumstances.'

"*Whether the conduct of the common carrier in a given particular accords with its legal duty in the premises is to be tested by comparing its conduct with that generally exercised by those engaged in the same business under the same or similar circumstances.*" (Emphasis supplied.)

In the instant case there was no testimony or evidence adduced that it was customary for other common carriers operating trackless trolley buses in Wisconsin to equip such buses with safety glass rather than plate glass. The only testimony relating to this point was the stipulated fact that other transport companies did operate streetcars and trackless trolley buses with the same type double-strength plate-glass windows with which the trackless trolley bus was equipped in which plaintiff sustained her injuries.

In the opinion in *Ormond v. Wisconsin Power & Light Co., supra,* this court quoted with approval the following statement from its decision in *Jensen v. Wisconsin Central R. Co.* (1911), 145 Wis. 326, 335, 128 N. W. 982, as follows:

"The proper standard of defendant's duty was the care which the great mass of mankind ordinarily exercise under the same or similar circumstances. Now and then it appears that the customary way of doing things is utterly disregardful of personal safety, where it is said, the mere fact that the way adopted was the customary way, is not a defense against the claim of liability. They are very extreme cases, quite different from one where men of judgment and experience commonly for a long time have been accustomed to arrange premises and instrumentalities for an ordinary business enterprise like a railroad, in a particular way, found by experience to be reasonably safe and convenient."

In the case of *Williams v. New Jersey-New York Transit Co.* (2d Cir. 1940), 113 Fed. (2d) 649 (certiorari denied, 311 U. S. 712, 61 Sup. Ct. 393, 85 L. Ed. 463), plaintiff was injured while riding in the bus of the defendant as a result of a brief case belonging to another passenger falling out of the overhead luggage rack and striking the plaintiff on the head. The plaintiff contended that the defendant was negligent in the manner in which such overhead luggage rack was constructed. There was no evidence introduced as to whether there was in existence any prevalent standard for

the construction of such overhead luggage racks. The circuit court of appeals reversed the judgment in favor of plaintiff entered upon the jury's verdict and directed dismissal of the complaint. In the opinion written by Judge LEARNED HAND the court stated (p. 651) :

"From these decisions we do not see how we can avoid concluding that in New Jersey a passenger in order to recover because of a defect in the equipment of a common carrier— though not because of a defect in its operation—*must show that the carrier diverged from some standard which has been in general use in equipment of the kind or at least that the construction is unusual.* When the evidence leaves both issues at large, the carrier apparently may provide what it thinks best, and a jury is not allowed to fix another standard." (Emphasis supplied.)

A case in which the facts are nearly "on all fours" with those in the case at bar is that of *Sengel v. Columbus & Southern Ohio Electric Co.* (1941), 69 Ohio App. 402, 40 N. E. (2d) 170. The plaintiff in that case was injured while riding as a passenger in the electric trolley bus of the defendant as the result of the shattering of a plate-glass window due to a snowball being thrown against the same by a person unknown to the parties. The same contention was advanced in behalf of the plaintiff therein, as in the instant case, that the defendant, in the exercise of the degree of care owing to her, had the obligation to place safety glass in the window of its coach. The trial court directed a verdict in favor of the defendant and the appellate court affirmed. In its opinion the court stated (69 Ohio App. 405, 40 N. E. (2d) 171) :

"There is no allegation nor any observation in the opening statement of counsel to the jury to the effect that it is the general practice of carriers operating trolley buses to equip such buses with safety glass. Until this situation appears, to hold that the defendant may be charged with the obligation to equip the windows of its buses with safety glass would be

enjoining upon it the observance of a higher degree of care than is placed upon other carriers in the prudent operation of their cars."

Plaintiff relies upon *Fisher v. Waupaca E. L. & R. Co.* (1910), 141 Wis. 515, 124 N. W. 1005. That case involved an action for the wrongful death of a woman who was thrown from the buckboard in which she was riding onto defendant's streetcar tracks as a result of the horse drawing the vehicle running away, and an approaching streetcar ran over her body. The plaintiff alleged, as a ground of negligence against the defendant carrier, the fact that the front of the streetcar was not equipped with a fender, the purpose of which being to pick up any object in the path of the car in danger of being run over. Prior to the accident the legislature had enacted a statute requiring streetcars to be equipped with such fenders but the effective date of the enactment was subsequent to that of the accident. A divided court affirmed a judgment for the plaintiff rendered upon a jury verdict.

However, the *Fisher Case* is readily distinguishable from the instant case because in the former it appears from the printed briefs that there was expert testimony, that, if defendant's streetcar had been constructed according to "the most approved plan," it would have been equipped with a fender. In the instant case there was a complete absence of any testimony or evidence of such nature with respect to equipping the defendant's trackless trolley bus with windows of safety glass.

From the foregoing-cited authorities we cannot escape the conclusion that the plaintiff has failed to make out a case of negligence against the defendant at common law. This is because of the utter lack of any proof that other well-managed and prudent carriers of passengers operating trackless trolley buses customarily equipped the same with windows made of safety glass.

We next turn to the question of whether there was any statute in existence at the time of the accident which required the defendant carrier to equip the windows of its trackless trolley bus, in which plaintiff was riding as a passenger, with safety glass instead of double-strength plate glass. The only statute specifically requiring the use of safety glass in motor vehicles and trackless trolleys at the time of the occurrence of the accident was sec. 85.063 (1), Stats. 1951, which provided as follows:

"It shall be unlawful for any person to operate on any public highway or street in this state any motor vehicle which is registered in this state and which is manufactured or assembled after January 1, 1936, or any trackless trolley which is manufactured after January 1, 1952, unless such motor vehicle or trackless trolley is equipped with safety glass wherever glass is used thereon in partitions, doors, windows, or windshields. This provision shall apply only to motor vehicles that are manufactured after January 1, 1936, and to trackless trolleys manufactured after January 1, 1952."

Under the definitions of "vehicle" and "motor vehicle" contained in subs. (1) and (2), sec. 85.10, Stats. 1951, trackless trolley buses are specifically excluded so that for the purposes of said sec. 85.063 (1), Stats. 1951, a trackless trolley does not constitute a motor vehicle. Therefore, only trackless trolleys manufactured after January 1, 1952, were required by the statute to be equipped with safety glass. The trackless trolley in which plaintiff was riding at the time of injury was manufactured and placed in operation in 1936.

In spite of the fact that a plain reading of sec. 85.063 (1), Stats. 1951, makes it clear that it is inapplicable to the trackless trolley bus upon which plaintiff was injured, nevertheless, plaintiff's counsel attempt to ground liability thereon in the following two respects: (1) That the limitation of the statute to trackless trolleys manufactured after January 1, 1952, is discriminatory, and, therefore, constitutes an unconstitu-

tional denial of equal protection of the laws; and (2) the requirement of the statute, that motor vehicles manufactured after January 1, 1936, be equipped with safety glass, affords a basis for finding that the defendant was negligent in not equipping its trackless trolley bus with safety glass on the ground that if it is recognized by the legislature that safety glass is required in motor vehicles, the trial court was warranted in finding that conditions with respect to operation of trackless trolleys were analogous to those of gasoline-propelled buses, which latter vehicles do fall under the definition of a "motor vehicle" contained in sec. 85.10 (2), Stats. 1951.

Prior to the enactment of ch. 90, Laws of 1951, by the legislature, sec. 85.063 (1), Stats., had no application to trackless trolleys but was only applicable to motor vehicles. Plaintiff's counsel contend that limiting the requirement of safety glass to vehicles manufactured after January 1, 1952, constitutes an arbitrary and unreasonable classification totally unrelated to the objectives sought to be attained in protecting the safety of trackless-trolley passengers, and unlawfully discriminates between passengers riding on trackless trolleys manufactured prior to 1952 as compared to those passengers riding on trackless trolleys manufactured after such date, and also those riding on gasoline-propelled buses. In the first place, statutory classifications based upon time are generally recognized as valid. 12 Am. Jur., Constitutional Law, p. 164, sec. 486. See also *Sammarco v. Boysa* (1927), 193 Wis. 642, 215 N. W. 446, 55 A. L. R. 370. Secondly, it would not aid plaintiff's cause for us to hold that there was an unconstitutional classification made by the legislature as the result of its amendment of sec. 85.063 (1), Stats., by ch. 90, Laws of 1951, so as to require safety glass in trackless trolleys manufactured after January 1, 1952. Such a holding would invalidate the entire amendment and leave sec. 85.063 (1),

as it existed prior to the amendment when it was only applicable to motor vehicles.

Counsel's other contention, that the requirement of safety glass in motor vehicles made by sec. 85.063 (1), Stats., can be used as a handle to support a finding of negligence against defendant, was expressly repudiated by the Ohio court of appeals in *Sengel v. Columbus & Southern Ohio Electric Co., supra,* wherein it declared (69 Ohio App. 406, 40 N. E. (2d) 171):

"The mere fact that the general assembly has indicated a legislative policy to require safety glass to be installed in certain types of motor vehicles does not, in our judgment, obviate the obligation upon the plaintiff to establish that the use of such glass is generally recognized as essential to the safety of the passengers by companies operating the same type of public carrier as those employed by the defendant company."

There exists a sound basis for the action of the legislature in confining the effect of sec. 85.063 (1), Stats., prior to its amendment in 1951, to motor vehicles and excluding streetcars, railway cars, and trackless trolleys. Such latter type of vehicles ride on a track on the ground or are subject to an elevated wire track. It is obvious that what the legislature was concerned with was motor-vehicle passengers being injured by the vehicle striking some object causing the window glass to shatter, rather than the rare case of someone throwing a rock or snowball through the window of the vehicle. Motor vehicles on the highways, such as gasoline-propelled buses, are not subject to the guiding control of tracks or overhead trolleys, but may be operated in any part of the highway their drivers may choose. For such motor vehicles safety glass is more essential than in streetcars or trackless trolley buses. Therefore, the legislative requirement that gasoline-propelled vehicles, including buses, must be equipped with safety glass, cannot in itself afford the basis of sustain-

ing a finding that failure to equip a trackless trolley bus with such safety glass constitutes negligence.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.