ROBERT GRACE, A MINOR, BY ANTONE R. BURGO, HIS GUARDIAN AD LITEM, AND LAWRENCE R. HOLT, ADMINISTRATOR OF THE ESTATE OF LORRAINE GRACE BURGO, DECEASED *v.* CAROLINE KUMALAA.

No. 4324.

NOVEMBER 18, 1963.

TSUKIYAMA, C.J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY LEWIS, J.

Plaintiff, Robert Grace, a first grader of the age of six years and eleven months, was injured when he fell as he was leaving defendant's station wagon in which he had ridden to school. He cut his right hand on a glass jar he was carrying. Defendant was held liable and on appeal contends, *first,* that there was insufficient evidence of negligence on her part to go to the jury, and *second,* that the court erred in instructing the jury that plaintiff, being under seven, was incapable of contributory negligence, and further erred in refusing to give the instruction proffered by defendant on this matter.

Robert had been riding with defendant since his family moved to Maili, Oahu, in May, 1960. He rode with her the balance of that school year, and resumed at the start of the new school year in September, 1960. The accident occurred February 7, 1961. Defendant was in the business of driving Maili children back and forth to school, making four round trips a day, three to and from the elementary school and one to and from high school. She registered the children at the beginning of the year, and charged one dollar per week for each child, subject to refund if the child was unable to attend school at the rate of twenty cents per day.

Defendant owned and used only the one station wagon,[1] having three seats. She placed four children on the back seat, five on the middle seat (which could be fully occupied only when a jump seat was lowered after the back was filled), and two in the front. There was testimony that a twelfth child was standing on the day of the accident, but we deem this immaterial.

Defendant regularly picked up Robert, his cousin Ellsworth, Beatrice Glover, and two other children at the

---

[1] The record contains no description of the station wagon other than as set out in this paragraph.

corner of Robert's house, where they boarded the right-hand side of the vehicle. On the day of the accident Robert, with the knowledge of his mother, had with him two covered glass jars containing caterpillars. It is undisputed that at the time of boarding Ellsworth had one of the jars. After seating himself in the middle seat next to Ellsworth, Robert repossessed himself of this jar and passed both around among the children. He was carrying both jars as he left the car. He tripped on a small rubber mat on the right-hand side of the car, fell out of the car onto the ground, and cut his right hand on broken pieces of the jar he was carrying in that hand.

There was testimony of Beatrice Glover, an older child, that Robert carried one jar aboard in a bag taken from a garbage can, while Ellsworth held the other at his side away from defendant. Robert denied that he used a bag or tried to hide the jars. Defendant testified she was looking at the children as they got in the car, watching for dangerous objects and saw none, that she would not permit children to bring into the car sticks, umbrellas, scissors, bottles, or "things like that," that she did permit paper bags—"I believe it is their lunch," that if she had seen the jars she would not have allowed them to be brought into the car or would have taken them away from the children and put them by her feet. Beatrice Glover corroborated that defendant had warned the children against, and had stopped them from, taking bottles in the car, and further testified that she reminded Robert of this on the occasion in question as they were waiting to be picked up, after which as she testified he procured a bag. On the other hand, it was her testimony that defendant was not watching the children as they boarded but was looking ahead.

Defendant testified that on the registration form there was set out her "rule" against bringing bottles or any-

thing harmful or unsafe into the car. However, she had destroyed the registration forms for the year in question. Robert's mother testified that "several times" before the accident he had taken bottles to school in defendant's car. She did not remember any statement in the registration form about bottles and dangerous objects. The court limited consideration of the registration form to the mother's own case, she being herself a plaintiff seeking (and obtaining) recovery of the medical bills.[2] Whether the ruling limiting this evidence to the mother's case was correct is not before us.

Defendant was not watching the children as they left the car. In order to be sure the children exited from the right-hand side and not into the street she was leaning over to hold shut the door on the left-hand side. She did not know of the accident until one of the children told her, at which time she got out of the car to help Robert. Asked if she shouldn't have been observing the children instead of looking the other way she testified: "I look at them when they get in the car." She conceded that she could have held the left-hand door in such a way as to also observe the children. She further testified that she would have prevented Robert from attempting to alight with jars in both hands if she had seen what he was doing.

In considering the contention that a verdict should have been directed for defendant we necessarily consider the applicable standard of care. Over objection of defendant that she was a private carrier and not subject to the common carrier rule requiring the "highest degree of care," the court instructed the jury that "the operator of a carrier for hire such as the Defendant in the case, owes the highest degree of care to passengers, rather than the

---

[2] Robert's mother, Lorraine Grace Burgo, died during the pendency of the appeal and her administrator was substituted.

usual standard of ordinary care * * *." But defendant has not specified this instruction as error and in her brief has conceded that "a carrier has the highest duty of care," making no distinction between private and common carriers. We shall approach the question accordingly, without making any ruling as to whether there is a difference in the degree of care required of private carriers as compared with common carriers, and without passing on defendant's status as a private or common carrier. Moreover, even if defendant was a private carrier, and even if a private carrier is only subject to a duty of ordinary care in the usual case,[3] "children of tender years are entitled to a degree of care from others proportioned to their inability to foresee and avoid the perils which they may encounter * * *." *Cartwright* v. *Graves*, 182 Tenn. 114, 184 S.W.2d 373, 378, quoting from *Townsley* v. *Yellow Cab Co.*, 145 Tenn. 91, 237 S.W. 58; *Shannon* v. *Central-Gaither Union School Dist.*, 133 Cal. App. 124, 23 P.2d 769, 771; 38 Am. Jur., *Negligence*, § 40. As held in *Hunter* v. *Boyd*, 203 S.C. 518, 28 S.E.2d 412, 414, "in view of the fact that the passengers transported on a bus of this character are children, many of whom [are] of very tender years, it is manifest that the standard of due care would comprehend a high degree of caution and vigilance with respect to such a child."

We hold that there was no reversible error in the court's refusal to direct a verdict for defendant. True, negligence must be shown, and there must be a causal connection between the negligent act and the injury. *Mitchell* v. *Branch*, 45 Haw. 128, 131, 363 P.2d 969, 973; *Dzurik* v. *Tamura*, 44 Haw. 327, 329, 359 P.2d 164, 165; *Fuller* v. *Honolulu Rapid Transit & Land Co.*, 16 Haw. 1, 9-10.

---

[3] *Cf.*, *Shannon* v. *Central-Gaither Union School Dist.*, 133 Cal. App. 124, 23 P.2d 769, 770; *Hopkins* v. *Yellow Cab Co.*, 114 Cal. App. 2d 394, 250 P.2d 330; Annot., 42 A.L.R. 853; 13 C.J.S., *Carriers*, § 678d.

There was no evidence that the keeping of the rubber mat in the car was in itself negligent. *Cf., Finlayson* v. *Bryan,* 56 N.D. 407, 217 N.W. 662; *Graves* v. *Roman,* 113 Cal. App. 2d 584, 248 P.2d 508. So far as appears, the mat had been in use prior to the accident and was not a new feature in defendant's car. However, the jury could find that the carrying of the two jars, one in each hand (the one in the right hand either in a bag or grasped directly, depending on the view taken by the jury of the evidence) disturbed Robert's balance as he left his seat and approached the door in the confined space of the station wagon, causing him to fall. The evidence further raised a question for the jury as to whether defendant properly supervised the young children, of whom Robert was one, while they were in her care.

This brings us to the remaining specifications of error, having to do with the instructions. The jury was instructed, over objection, as follows:

"You are instructed that under the law children under seven are incapable of contributory negligence and therefore you must find in favor of Robert Grace if you find any degree of negligence on the part of Mrs. Kumalaa proximately causing the accident."

Defendant requested the following instruction, which was refused:

"A minor may also be negligent, but a minor is not held to the same standard of conduct as an adult. A minor is required to use the degree of care which a reasonably careful child of the same age, mental capacity and experience would use.

"If you find that plaintiff Robert Grace did not use that degree of care which a reasonably careful child of his age, mental capacity and experience would have used under the circumstances of this case, then the plaintiff Robert Grace is guilty of contributory negli-

gence and he cannot recover any damages, and you must return a verdict in favor of defendant."

We hold that the instruction given constituted reversible error and that defendant's requested instruction should have been given.

In *Ellis* v. *Mutual Telephone Co.*, 29 Haw. 604, 624, it was held that a five-year-old child was incapable of contributory negligence. The opinion made it plain that the court was restricting its ruling to children under six years of age and was not adopting the Illinois rule, under which a child under seven is conclusively presumed incapable of contributory negligence. The Illinois rule does not commend itself to us, and we decline to extend the *Ellis* case to the present one. As stated in *Eckhardt* v. *Hanson*, 196 Minn. 270, 274, 264 N.W. 776, 778: "Under present-day circumstances a child of six is permitted to assume many responsibilities. There is much opportunity for him to observe and thus become cognizant of the necessity for exercising some degree of care."

It is contended that this court should at least recognize a rebuttable presumption that a child under seven is incapable of contributory negligence. This presents the question whether the requested instruction should have been preceded by another, instructing the jury that there is a presumption of incapacity of a child of Robert's age and that the jury must first determine whether there was evidence sufficient to overcome this presumption. *Bush* v. *New Jersey & New York Transit Co.*, 30 N.J. 345, 358, 153 A.2d 28, 35. This case is annotated, 77 A.L.R.2d 917, the third in a series of annotations commencing with 107 A.L.R. 4, supplemented by 174 A.L.R. 1080. These annotations make unnecessary any extended discussion of this subject.

This jurisdiction follows the rule that defendant has the burden of proof as to contributory negligence. *Anduha*

v. *County of Maui,* 30 Haw. 44, 50.[4] Hence, if a rebuttable presumption were recognized, defendant would have the burden of showing capacity of a minor allegedly guilty of contributory negligence. Likewise, if no rebuttable presumption is recognized, defendant has the burden of adducing sufficient proof to justify submission to the jury of the question of contributory negligence, and at least in the case of a child of Robert's age that entails proof of the child's experience and mental capacity under the established rule that: "A child is 'only required to use the care appropriate to his age, experience and mental capacity.' "[5] And unless the evidence would support the conclusion that the child had at the time of the accident enough experience and mental capacity to exercise some significant measure of care in the situation confronting him there could be no occasion for the jury to compare the plaintiff with the fictional "reasonably careful child of the same age, experience and mental capacity." Evidence as to experience and mental capacity, therefore, is necessary not only to the application of the standard of care required of a child but also, preliminarily, to show that the child was capable of some degree of care. Hence, whether one speaks of a rebuttable presumption or not, the result is the same. We are of the view that the rebuttable presumption rule merely confuses the issue, which is the usual one as to the sufficiency of the evidence to go to the jury, *first,* on the issue of the capacity of the child, and *second,* on the issue of his use of his capacity, if found.

"Where the facts are disputed and reasonable men might differ on the facts or the inferences which may be

---

[4] Contributory negligence is an affirmative defense. H.R.C.P., Rule 8(c).

[5] *Fraga* v. *Hoffschlaeger Co.,* 26 Haw. 557, 568, *aff'd,* 290 Fed. 146 (9th Cir.) ; *Hoyt* v. *Rosenberg,* 80 Cal. App. 2d 500, 182 P.2d 234.

reasonably drawn from the facts, the question of negligence is left to the jury under proper instructions; but where there is no conflict from the evidence and but one inference can be drawn from the facts, it is the duty of the court to pass upon the question of negligence and proximate cause as questions of law." *Carreira* v. *Territory*, 40 Haw. 513, 517. This is equally true where contributory negligence is the issue. *Ferrage* v. *Honolulu Rapid Transit & Land Co.*, 24 Haw. 87, 91. And it also is true where, in determining contributory negligence, the capacity of a child is in issue. *Holmes* v. *Missouri Pacific Ry.*, 190 Mo. 98, 105, 88 S.W. 623, 624; *Camardo* v. *New York State Rys.*, 247 N.Y. 111, 159 N.E. 879. Hence there are several possibilities in a case such as this, of which the following will serve to clarify the point, that is, the evidence may be: (1) insufficient for the jury to employ the standard of care applicable to a child, either because the evidence indisputably shows the child incapable, or for want of sufficient evidence as to his experience and mental capacity; (2) conflicting but sufficient for the jury to find the child capable and employ the applicable standard of care; (3) such as to lead only to the conclusion that the child was capable of some degree of care, but at the same time present a question for the jury as to whether he was guilty of contributory negligence, requiring the jury to apply, under proper instructions, the standard of care appropriate to a child.

In the first instance the issue of contributory negligence should not be presented at all to the jury. *Baldwin* v. *Hosley*, 328 S.W.2d 426 (Ky.); *Baker* v. *Public Serv. Ry.*, 79 N.J.L. 249, 251, 75 Atl. 441, 442. In the second instance the issues would be for the jury but an instruction in the form requested by defendant in the present case would not suffice as the jury should be so instructed as to present the question whether the child was capable.

*Cf., Ward* v. *Music,* 257 S.W.2d 516, 518 (Ky.). In the third instance defendant's requested instruction is appropriate, and it is the third instance that we have here. *Cf., Payne* v. *Blevins,* 280 Fed. 310, 315 (4th Cir.) ; *Dixon* v. *Stringer,* 277 Ky. 347, 355, 126 S.W.2d 448, 452; *Gigoux* v. *Yamhill County,* 73 Ore. 212, 144 Pac. 437.

Our reasons for holding that the evidence was such as to lead only to the conclusion that Robert was capable are as follows: He had been riding with defendant since the previous May, except for the summer vacation. He never had had any difficulty getting in or out of the car,[6] though in accordance with defendant's usual practice he received no help. Defendant's practice was to help only the kindergarten children at the beginning of the school term for a month or so when they were not attending at regular hours. Robert's mother arranged for him to ride with defendant, and there was no evidence that she had any doubt as to his ability to get in and out by himself, or that she expected him to receive more help than defendant usually gave to first-graders, or that a first-grader ordinarily would receive help in alighting from a conveyance such as this. Robert's testimony, throughout, showed him to be a bright child. Moreover, he testified:

"Q. At the time of the accident, did you know that bottles would break—could break and cut you?

"A. Yes.

"Q. Did you know that you should be careful when you were carrying bottles?

"A. Yes.

"Q. Didn't you think it would be rather difficult

---

[6] It is to be noted that evidence of training and experience is admissible in the case of a child as bearing upon his capacity, but not for the purpose of showing that he was equally careful upon the occasion in question. *Ferris* v. *Turner,* 320 Mass. 555, 70 N.E.2d 715, 716 (child) ; *cf., Gilliam* v. *Gerhardt,* 34 Haw. 466, 468 (adult).

you [sic] get out of the car—you say you were carrying two bottles?

"A. Yes.

"Q. Didn't you think you might fall carrying two bottles?

"A. Yes."

We do not agree with the contention that, in any event, no contributory negligence was shown. The jury could have found that Robert was warned, and that he deliberately concealed the jars knowing they were a hazard and that he might fall. *Cf., Smith* v. *Harger,* 84 Cal. App. 2d 361, 191 P.2d 25. The jury also could have found that a reasonably careful child of Robert's age, mental capacity and experience would not have attempted to alight with jars in both hands. On the other hand, of course, the jury could have found that Robert was not warned, did not conceal the jars, and did not fail to exercise a reasonable measure of care, considering his age, mental capacity and experience, even though he had some knowledge of the danger in carrying the two jars.

Reversed and remanded for a new trial.

*Frank D. Padgett (Alexander C. Marrack* with him on the briefs, *Robertson, Castle & Anthony* of counsel) for defendant-appellant.

*David N. Ingman* for plaintiffs-appellees.

### DISSENTING OPINION OF WIRTZ, J., WITH WHOM TSUKIYAMA, C.J., JOINS.

Were I able to find some basis to submit the issue of liability to the jury I would wholeheartedly agree with the second portion of the opinion of the majority in dealing with the instruction to be given the jury for their consideration of the question of the contributory negligence of a six-year old child.

To warrant submission of the issue of liability to the

jury, however, there must be some substantial evidence amounting to more than a mere scintilla showing negligence. *Holstein* v. *Benedict,* 22 Haw. 441; *Bishop & Co.* v. *Hawaii Soap Co.,* 28 Haw. 180; *Waterhouse Trust Co.* v. *Rawlins,* 33 Haw. 876. Also, "* * * where there is no conflict from the evidence and but one inference can be drawn from the facts, it is the duty of the court to pass upon the question of negligence and proximate cause as questions of law." *Carreira* v. *Territory,* 40 Haw. 513, 517.

"Actionable negligence" has been defined in *Ward* v. *Inter-Island Steam Nav. Co.,* 22 Haw. 66, 69, as "the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such person would not have done." As pointed out in *Carreira* v. *Territory, supra,* 40 Haw. 513, 518-519, to establish liability for negligence "* * * it is incumbent upon the plaintiff to show three things: First, a breach of duty which defendant owed to him; second, a negligent breach of that duty; and, third, injuries received thereby resulting proximately from that breach of duty."

The evidence presented by plaintiffs merely establishes that an accident occurred when the minor plaintiff attempted to leave the station wagon. The fact that the child fell and cut himself is not evidence of negligence on the part of defendant. A carrier for hire is not an insurer of the safety of its passengers.[1] *Merritt* v. *Interstate Transit Lines,* 171 F.2d 605 (8th Cir. 1948); see Annot., 9 A.L.R.2d 938.

---

[1] The trial court so instructed the jury in Defendant's Instruction No. 16, as modified and given over objection of plaintiffs:

"Although Mrs. Kumalaa was a carrier for hire and required to exercise a high degree of care consistent with the practical operation of her vehicle, she was not an insurer of Robert Grace's safety. In other words, Mrs. Kumalaa was not required to protect Robert Grace against dangers which could not reasonably have been foreseen."

Considering the events in a light most favorable to plaintiffs they simply show that the minor plaintiff and his cousin took two jars into defendant's station wagon and that he fell, while carrying the jars, one in each hand, in getting out of the car. There was no evidence to show that defendant knew the jars were in the car or should have foreseen any risk of harm to the minor plaintiff. Although a carrier has the highest duty of care,[2] the only dangers which a carrier must protect its passengers against are those which are reasonably foreseeable. *Fuller* v. *Honolulu Rapid Transit & Land Co.*, 16 Haw. 1; *Merritt* v. *Interstate Transit Lines, supra.* Certainly, the fact that the child tripped on a rubber floor mat on the floor of defendant's station wagon was not, in and of itself, evidence of negligence. The record fails to show that the mat was improperly laid or maintained. *Finlayson* v. *Bryan*, 56 N.D. 407, 217 N.W. 662; *cf.*, *D.C. Transit System, Inc.* v. *Smith*, 173 A.2d 216 (Munic. Ct. of App. D.C. 1961); *Robinson* v. *Southwestern Bell Tel. Co.*, 26 Ill. App. 2d 139, 167 N.E.2d 793.

The minor plaintiff had ridden in defendant's car from May of the previous year and had never experienced any difficulty in getting in and out of the car, even while carrying things. None of the other children needed assistance and it would be unreasonable to require defendant to help children get in and out of the station wagon any more than a school bus driver should assist normal school chil-

---

[2] The case was submitted on this theory. The law of the case was settled by Defendant's Instruction No. 16, given as modified over objection of plaintiffs, set forth in footnote 1, and Plaintiffs' Instruction No. 2, given as modified over objection of both parties:

"You are instructed that the operator of a carrier for hire such as the defendant in this case, owes the highest degree of care to passengers, rather than the usual standard of ordinary care which applies to non-carriers. This duty of exercising the highest degree of care applies to passengers alighting from the vehicle after it has stopped." Neither instruction is subject to review under this appeal.

dren on and off a bus. The care owed by a carrier to its passengers must be consistent with the practical operation of its business. *Hathaway* v. *Checker Taxi Co.,* 321 Mass. 406, 73 N.E.2d 603; *Werlein* v. *Milwaukee Electric Ry.,* 267 Wis. 392, 66 N.W.2d 185. So it cannot be said that defendant was negligent in failing to help the minor plaintiff out of her station wagon when she had no knowledge of or reason to believe that there was any risk of harm to him. *Schickel* v. *Yellow Cab Co.,* 369 Pa. 356, 85 A.2d 138; *Finlayson* v. *Bryan, supra.* In *Somerset* v. *Stinson,* 141 N.E.2d 781 (Ohio App. 1955), it was stated that, as a matter of law, there was no duty on the part of a cab driver to assist a normal 78-year old woman in leaving a taxi. It should be obvious that a normal six-year old boy can more easily and readily get out of a car or a bus than a normal 78-year old woman, as elderly people are notoriously more likely to fall than youngsters. See Annot., 56 A.L.R.2d 1257.

In my struggle with the evidence in this case I have been unable to discern any breach of the duty of care owed to the minor plaintiff by the defendant which caused the injury to the child. While it may be that such breach of duty is lurking somewhere in the background, as intimated by the opinion of the majority, although not apparent to me, still it is axiomatic[3] that it was incumbent on the plaintiffs to show by a preponderance of the evidence in what manner defendant had breached her duty of care to the minor plaintiff.[4] See *Southwestern Greyhound Lines,*

---

[3] Except, of course, in cases where the doctrine of *res ipsa loquitur* is applicable. However, it is to be noted that the growing tendency of submitting all accident cases to the jury for consideration regardless of the quantum and quality of the proof of negligence tends to nullify the doctrine of *res ipsa loquitur*, as all accidents thus become clothed with an aura of negligence or liability.

[4] The trial court instructed the jury in Plaintiffs' Instruction No. 11, given by agreement:
"In order to establish the essential elements of the plaintiffs' claim

*Inc.* v. *Smith,* 277 P.2d 157 (Okla. 1954); *Southeastern Greyhound Lines, Inc.* v. *Chumley,* 312 Ky. 154, 226 S.W.2d 777; *Crist* v. *Washington, Virginia & Maryland Coach Co.,* 196 Va. 642, 85 S.E.2d 213. That plaintiffs failed to sustain the burden of establishing negligence by substantial evidence, amounting to more than a mere scintilla, is reflected in the opinion of the majority.

The fact there was an accident, resulting in injury to the minor plaintiff, however regrettable, should not give rise to liability without fault.

I would reverse, in that the trial court erred in failing to direct a verdict in favor of the defendant and in refusing to enter judgment notwithstanding the verdict, and remand the case for entry of judgment for defendant.

---

for general and special damages, the burden is upon plaintiffs to prove, by a preponderance of the evidence, the following facts: *First,* that the defendant was negligent in one or more of the particulars alleged; * * *." That this instruction was meaningless and of no assistance to the jury can be seen from the fact that the only allegation of negligence set forth in the complaint gives no particulars:

"* * *; that on February 7, 1961 while plaintiff was riding as a paying passenger in defendant's automobile defendant negligently allowed plaintiff to fall from said automobile with a bottle in his hand * * *."